**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION**

| | | |
|---|---|---|
| **CATHERINE MECHE** | § | **CIVIL ACTION NO:** |
| | § | |
| ***Plaintiff*** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **GREEN LIGHT SOLAR, LLC OF TEXAS AND GOODLEAP, LLC** | § | |
| | § | |
| | § | |
| | § | |
| ***Defendants*** | § | **JURY TRIAL REQUESTED** |

# COMPLAINT

## I. Parties

1. Plaintiff, CATHERINE MECHE, is an individual that now and has been at all times a citizen of the state of Louisiana.

2. Defendant GREEN LIGHT SOLAR, LLC OF TEXAS, hereinafter "Green Light," is a citizen of the State of Texas and is authorized to conduct business in the State of Louisiana. Upon information and belief, its principal business office is located in Houston, Texas.

Green Light's agent for service of process is MISTY FRY, 2736 O'NEAL LANE STE B, BATON ROUGE, LA 70816.

3. Defendant GOODLEAP, LLC, hereinafter "GoodLeap," is a citizen of the State of California and is authorized to conduct business in the State of Louisiana. Upon information and belief, its principal business office is located in Roseville, California.

GoodLeap's agent for service of process is C T Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

**II. Jurisdiction**

4. This Court has federal question jurisdiction over the lawsuit under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d); and 28 USC § 1331 in that the disputes involve predominant issues of federal law, and the amount of controversy exceeds $50,000.00.

**III. Venue**

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including the sale, installation, and performance of the Subject System at Plaintiff's home in Louisiana.

**IV. Conditions Precedent**

6. All conditions precedents have been performed or have occurred.

**V. Facts**

7. Plaintiff is a Louisiana consumer who owns and resides at a home located in Rayne, Louisiana (the "Property").

8. On or about September 12, 2022, Plaintiff entered into a written Solar Installation and Purchase Contract with Green Light Solar, LLC OF TEXAS for the design, sale, and installation at the Property of a residential solar energy system consisting of panels, inverters, and related equipment integrated to operate as a single generating system (the "Subject System").

9. The Contract describes the Subject System as a turnkey system, including design, engineering, permitting, and interconnection work necessary for operation of the system.

10. The Contract identifies the Subject System's size as approximately 14.800 kW and reflects a total contract price of $57,016.00.

11. On or about October 10, 2022, Green Light provided Plaintiff with a written production disclosure bearing Green Light's logo and addressed to Catherine Meche. The disclosure stated: "You have purchased a 14.80 kW solar system. Based on our site survey and

design, we estimate that the system will produce approximately 16,620 kWh annually." Plaintiff signed the disclosure on or about October 10, 2022.

12. The purchase was financed through GoodLeap, LLC. GoodLeap's Truth in Lending disclosure reflects that $57,016.00 was financed and paid to Green Light Solar in connection with the Subject System installation at the Property.

13. After installation and activation, Plaintiff's electric utility bills reflect solar production under the line item labeled "Distributed Generation."

14. Plaintiff's 2024 utility statements reflect monthly Distributed Generation values including, but not limited to, 703 kWh, 749 kWh, 1,017 kWh, 1,007 kWh, 998 kWh, 977 kWh, 707 kWh, and 741 kWh for various 2024 billing periods.

15. Plaintiff's 2025 utility statements reflect monthly Distributed Generation values including, but not limited to, 917 kWh, 921 kWh, 798 kWh, and 795 kWh for various 2025 billing periods.

16. Plaintiff's 2026 utility statements reflect monthly Distributed Generation values including, but not limited to, 438 kWh, 549 kWh, 718 kWh, and 901 kWh for various 2026 billing periods.

17. These utility-bill generation figures are materially below the annual production estimate Green Light provided to Plaintiff, which stated that the 14.80 kW system was estimated, based on Green Light's site survey and design, to produce approximately 16,620 kWh annually.

18. The Subject System's underproduction has persisted across multiple years and billing periods, is material to the value and usefulness of the system and is not attributable to ordinary seasonal variation alone.

19. As a result of the Subject System's underperformance, Plaintiff has suffered damages, including payment for a solar energy system priced and financed based upon represented production that has not been realized, and continued out-of-pocket utility expenses that the system was represented as offsetting.

## VI. Causes of Action

### COUNT 1: LOUISIANA REDHIBITION (Green Light)

20. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

21. The Subject System is a "thing" subject to redhibition under Louisiana Civil Code articles 2520 et seq.

22. Green Light sold the Subject System to Plaintiff and delivered it for the use and benefits represented at the time of sale.

23. Green Light also acted as the designer, integrator, and assembler of the Subject System as a completed turnkey system, including selection of system size and configuration, component integration, and delivery of a single functioning generating unit.

24. The Subject System contains redhibitory defects and nonconformities under Louisiana Civil Code article 2520 because it has materially failed to perform as represented at the time of sale, including by generating substantially less electricity than the annual production level represented in the Contract documents. The defect substantially impairs the Subject System's usefulness and value and would have caused a reasonable buyer either not to purchase the Subject System or to pay substantially less for it.

25. The defect and nonconformity existed at the time of sale and delivery. The defect was not apparent at delivery and could not reasonably be discovered by ordinary inspection

because the defect is revealed through operational performance over time and objective production data.

26. To the extent required by Louisiana Civil Code article 2522, Plaintiff provided Green Light notice of the Subject System's material underperformance and afforded a reasonable opportunity to investigate and cure. The defect has not been cured, and the Subject System remains materially underperforming.

27. Plaintiff is a buyer under Louisiana Civil Code articles 2520 et seq.

28. Green Light is liable in redhibition as the seller of the Subject System.

29. Further, Green Light is liable as a manufacturer under Louisiana Civil Code article 2545 because it delivered the Subject System as a completed turnkey generating system under its direction and control and held the Subject System out as a finished product capable of achieving the represented level of performance.

30. As a result of the redhibitory defect, Plaintiff is entitled to rescission of the sale and return of the purchase price, or alternatively a reduction in the purchase price, together with recovery of allowable collateral charges and damages as provided by Louisiana law.

31. To the extent Green Light is determined to be a manufacturer, or to the extent it is determined to have known of the defect and failed to disclose it, Plaintiff is entitled to recover all damages allowed by law, including reasonable attorney fees and costs.

**COUNT 2: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**(Green Light)**

32. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

33. Plaintiff is a "consumer" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3), because Plaintiff purchased the Subject System for household use.

34. Defendant Green Light is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5), because it supplied the Subject System to Plaintiff and provided written warranty coverage in connection with the sale and installation.

35. The Subject System is a "consumer product" within the meaning of 15 U.S.C. § 2301(1) because it is tangible personal property normally used for personal, family, or household purposes, and was purchased by Plaintiff for such purposes. The Subject System consists of discrete manufactured components supplied for household use, including inverter equipment and modules, that remain identifiable consumer products notwithstanding installation. To the extent any portion of the Subject System is characterized as integrated into real property, the warranties and obligations at issue nevertheless apply to the consumer product components and to the written warranties issued in connection with the transaction.

36. Green Light provided written warranty commitments in connection with the transaction, including a 10-year workmanship warranty for the system installed and additional warranty representations concerning the installed system and component equipment.

37. Green Light breached its written warranties and implied warranties arising under applicable state law by supplying, designing, integrating, and installing a Subject System that contained defects or nonconformities in design, installation, workmanship, configuration, or integration, failed to perform as represented for its ordinary household solar-generation purpose, and was not corrected or cured within a reasonable time.

38. Plaintiff has performed all obligations required of her under the purchase agreement and warranty terms, except to the extent any such performance was excused, waived, or prevented by Defendants' acts or omissions as alleged herein.

39. As a direct and proximate result of Green Light's breaches of written and implied warranties, Plaintiff has sustained damages according to proof at trial, and the amount in controversy meets the jurisdictional requirements applicable to claims brought under 15 U.S.C. § 2310(d).

40. Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff seeks recovery of costs and expenses of suit, including reasonable attorney fees. Plaintiff has retained counsel, Richard C. Dalton, and has incurred and will continue to incur attorney fees, costs, and expenses.

**COUNT 3: BREACH OF CONTRACT**
**(Green Light)**

41. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

42. Plaintiff and Defendant Green Light entered into a valid and enforceable written agreement for the design, sale, and installation of the Subject System at the Property (the "Contract").

43. Under the Contract, Green Light undertook to provide a turnkey system, including design, engineering, permitting, and interconnection work necessary for the Subject System to operate as intended.

44. The Contract reflects a system size of approximately 14.800 kW and a total contract price of $57,016.00.

45. As part of the Contract documents, Green Light provided a written production estimate stating that, based on its site survey and design, the Subject System was estimated to produce approximately 16,620 kWh annually, and Plaintiff executed that disclosure in connection with the transaction.

46. Green Light further provided written warranty commitments associated with the sale and installation, including workmanship warranty coverage.

47. Plaintiff performed her obligations under the Contract, including by paying for the Subject System through financing arranged for the transaction.

48. Green Light breached the Contract by failing to deliver a Subject System that conformed to the Contract's representations and obligations, including the site-specific system design and production representations provided as part of the Contract documents.

49. Green Light further breached the Contract and its warranty obligations by failing to correct, cure, or bring the Subject System into conformity within a reasonable time after the Subject System's material underperformance became apparent.

50. Plaintiff's electric utility bills reflect the Subject System's monthly energy production under "Distributed Generation" and demonstrate that the Subject System has materially underperformed relative to the represented annual production.

51. As a direct and proximate result of Green Light's breaches, Plaintiff has sustained damages, including but not limited to the contract price paid for a system that does not perform as represented, ongoing utility expenses not offset as promised, and other consequential damages according to proof at trial.

52. Plaintiff is entitled to recover all damages and relief available under Louisiana law for Green Light's breach of contract, together with allowable costs and interest.

**COUNT 4: NEGLIGENT MISREPRESENTATION**
**(Green Light)**

53. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

54. At all relevant times, Defendant Green Light was engaged in the business of marketing, designing, selling, and installing residential solar energy systems and possessed superior knowledge and expertise concerning system design, site evaluation, and projected energy production.

55. In the course of soliciting and completing the sale, Green Light supplied Plaintiff with a written, site-specific production disclosure dated on or about October 10, 2022. The disclosure was addressed to Catherine Meche, bore Green Light's logo, and stated: "You have purchased a 14.80 kW solar system. Based on our site survey and design, we estimate that the system will produce approximately 16,620 kWh annually." Green Light supplied this representation for the purpose of guiding Plaintiff's decision whether to purchase and finance the Subject System.

56. The representation was based, according to Green Light's own disclosure, on Green Light's site survey and design. Green Light knew or, in the exercise of reasonable care, should have known that Plaintiff would rely upon Green Light's site survey, design, and production modeling in deciding whether to purchase the Subject System and finance the $57,016.00 transaction.

57. Green Light owed Plaintiff a duty to exercise reasonable care in obtaining, calculating, modeling, and communicating production information and other material facts because it knew or should have known that Plaintiff would rely upon such information in entering into the transaction. Green Light knew or should have known that Plaintiff would rely upon its site survey, design work, and production modeling, which were uniquely within Green Light's knowledge and expertise.

58. Green Light breached that duty by failing to exercise reasonable care in one or more of the following respects:

(a) Failing to perform a competent and accurate site assessment and production analysis prior to presenting a system design and annual production estimate;

(b) Presenting an annual production estimate without using reasonable inputs, assumptions, and modeling appropriate for Plaintiff's property and site conditions;

(c) Representing that the proposed turnkey system design was capable of achieving the stated level of annual production when Green Light knew or, in the exercise of reasonable care, should have known that the system as designed would not reasonably achieve that performance; and

(d) Failing to disclose material limitations or site-specific factors that would substantially affect actual system production.

59. Plaintiff reasonably and justifiably relied on Green Light's production representations and design expertise in deciding to purchase and finance the Subject System.

60. The production information supplied by Green Light was materially inaccurate and resulted in the installation of a system that has produced substantially less energy than represented.

61. As a direct and proximate result of Green Light's negligent misrepresentations, Plaintiff has sustained pecuniary loss, including payment for a system that does not perform as represented, diminished value of the Subject System, and increased out-of-pocket utility expenses, together with other damages according to proof at trial.

62. Plaintiff is entitled to recover all damages permitted under Louisiana law, together with legal interest and allowable costs.

**COUNT 5: DECLARATORY AND ANCILLARY RELIEF**
**(GoodLeap)**

63. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

64. Defendant GoodLeap financed, originated, or otherwise holds and services an extension of credit arising from the purchase of the Subject System and claims a security interest, lien, or other interest associated with the transaction.

65. Plaintiff seeks rescission of the sale of the Subject System and restoration of the parties to the status quo ante pursuant to Louisiana Civil Code articles 2520 et seq., and seeks related relief against GoodLeap to the extent necessary to effectuate rescission and avoid inconsistent obligations.

66. Upon rescission of the sale, any indebtedness, security interest, or lien arising from or dependent upon the rescinded sale should be canceled, released, or otherwise declared unenforceable, and the parties should be ordered to take all acts necessary to effectuate that relief.

67. Accordingly, Plaintiff seeks a declaratory judgment determining the rights and obligations of the parties as to the financing transaction and ordering cancellation and release of any security interest, lien, or other encumbrance asserted by GoodLeap that arises from or depends upon the sale of the Subject System, together with such ancillary relief as is necessary to effectuate rescission and restoration of the parties to the status quo ante.

68. Plaintiff further seeks all incidental and ancillary relief necessary to unwind the transaction and restore the parties to their pre-transaction positions, including such orders directing execution of releases, cancellation statements, or other instruments as may be required.

## VII. Economic and Actual Damages

69. As a direct and proximate result of the acts and omissions of Defendants as alleged herein, Plaintiff has sustained economic and actual damages, including but not limited to:

a. Amounts paid toward the purchase price and financing of the Subject System, including payments made pursuant to the loan securing the transaction;

b. The loss of the benefit of the bargain, including the difference between the value of the Subject System as represented and the value of the Subject System as delivered;

c. Diminution in value of the Subject System;

d. Increased and ongoing out-of-pocket utility expenses resulting from the Subject System's material underperformance;

e. Costs reasonably incurred in investigating, diagnosing, and attempting to address the Subject System's underperformance; and

f. Such other damages as may be proven at trial.

## VIII. Request for Rescission

70. Pursuant to Louisiana Civil Code articles 2520 et seq., Plaintiff seeks rescission of the sale of the Subject System. In the alternative, Plaintiff seeks a reduction in the purchase price as permitted by law.

71. The redhibitory defects and nonconformities in the Subject System substantially impair its usefulness and value to Plaintiff. Plaintiff would not have purchased the Subject System, or would have paid substantially less for it, had Plaintiff known of the defects at the time of sale.

72. Plaintiff therefore seeks judgment rescinding the sale of the Subject System and ordering restoration of the parties to the status quo ante, including return of the purchase price and amounts paid toward the financing of the transaction, together with cancellation of any associated indebtedness or security interest arising from the sale.

73. Plaintiff stands ready to surrender the Subject System in accordance with such orders as the Court deems appropriate upon rescission.

## IX. Attorney Fees and Costs

74. Plaintiff seeks recovery of attorney fees, costs, and expenses to the extent permitted by applicable law, including but not limited to recovery authorized under the Magnuson-Moss

Warranty Act, 15 U.S.C. § 2310(d)(2), and, where applicable, Louisiana Civil Code article 2545 in the event Green Light is determined to be a manufacturer or a seller in bad faith.

75. As a result of Defendants' acts and omissions as alleged herein, Plaintiff has been required to retain counsel to protect and enforce her rights and has incurred, and will continue to incur, reasonable attorney fees, costs, and expenses.

## X. Prayer

76. For the foregoing reasons, Plaintiff respectfully prays for judgment in her favor and against Defendants as follows:

a. For rescission of the sale of the Subject System pursuant to Louisiana Civil Code articles 2520 et seq., together with restoration of the purchase price and amounts paid toward the financing of the transaction, and cancellation of any associated indebtedness or security interest;

b. In the alternative, for a reduction in the purchase price in an amount to be determined at trial;

c. For general, special, and actual damages according to proof at trial, including but not limited to diminution in value and loss of the benefit of the bargain;

d. For recovery of increased and ongoing out-of-pocket utility expenses and other pecuniary losses resulting from the Subject System's underperformance;

e. For incidental and consequential damages as permitted by law;

f. For prejudgment and post-judgment interest as allowed by law;

g. For attorney fees as authorized by the Magnuson-Moss Warranty Act and, where applicable, Louisiana Civil Code article 2545;

h. For costs of court and allowable litigation expenses; and

i. For all other legal and equitable relief to which Plaintiff may be entitled.

## XI. Demand for Jury Trial

77. Plaintiff hereby demands a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*

Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
111 Park West Drive
Scott, LA 70583
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFF